**STATE of Tennessee, Appellee,**

v.

**Allen HODGKINSON, Franklin Humphreys, and Richard Jones, a/k/a "Rip–Off" Jones, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 8, 1989.

Permission to Appeal Denied by Supreme Court June 5, 1989.

Donald J. Boarman, Johnson City, for appellant Hodgkinson.

James T. Bowman, James D. Culp, Johnson City, for appellant Humphreys.

Mark D. Slagle, J. Eddie Lauderback, Johnson City, for appellant Jones.

Charles W. Burson, State Atty. Gen. & Reporter, Miriam Nabors Banks, James W. Milam, Asst. State Attys. Gen., Nashville, William R. Mooney, Asst. Dist. Atty. Gen., Jonesborough, Ken Baldwin, Asst. Dist. Atty. Gen., Johnson City, for appellee.

## OPINION

BYERS, Judge.

Defendants appeal as of right from their convictions for felony murder and conspiracy to sell over thirty grams of cocaine. The defendants were sentenced as Range I offenders on the conspiracy convictions with defendants Humphreys and Jones receiving thirty-five years imprisonment and defendant Hodgkinson receiving twenty years imprisonment. All the defendants were sentenced to life imprisonment on the felony murder charge, to run consecutively to their conspiracy sentences.

A number of issues are presented for appellate review, some of which are common to each defendant. We have consolidated and summarized the issues as follows:

1. Was the evidence legally sufficient to support the convictions? (Hodgkinson, Jones and Humphreys);

2. Should the trial court have granted defendants' motion for severance of defendants and for severance of offenses? (Hodgkinson, Jones and Humphreys);

3. Was it error to allow the state to present hearsay evidence of the conspiracy prior to use of non-hearsay, independent and direct evidence? (Hodgkinson and Jones);

4. Was it error for the court to refuse to instruct the jury regarding withdrawal from the conspiracy? (Humphreys);

5. Was it error for the court to refuse to instruct the jury on the need for independent corroboration of accomplice testimony? (Hodgkinson, Jones and Humphreys);

6. Did the court err in granting the state's special jury instruction as to conspiracy? (Hodgkinson and Jones);

7. Was it error to allow the jury to deliberate until 3:00 a.m.? (Hodgkinson, Jones and Humphreys);

8. Was it error to allow proof of and to instruct the jury on felony murder when that offense was not specifically set out

in the indictments? (Hodgkinson and Jones);

9. Should the evidence of telephone records obtained by the Tennessee Bureau of Investigation have been suppressed? (Hodgkinson);

10. Should defendant Jones' post-arrest statements have been suppressed? (Jones);

11. Was it error to admit a "mug shot" of defendant Hodgkinson? (Hodgkinson);

12. Was it error to allow the state to refer to and use defendant Jones' nickname of "Rip–Off"? (Jones);

13. Should the jury have been charged regarding accessory after the fact and the offense of disposing of a dead body? (Hodgkinson);

14. Were the sentences excessive and in violation of the *Gray* standards for consecutive sentencing? (Hodgkinson, Jones and Humphreys).

The judgment finding defendant Humphreys guilty of first degree murder is reversed. The remaining judgments are affirmed.

In various issues the defendants challenge the sufficiency of the evidence. In reviewing such challenges this Court must view the evidence in the light most favorable to the prosecution with the state being entitled to the strongest legitimate view and with all reasonable and legitimate inferences being resolved in their favor. The evidence will be deemed to have been sufficient if, when viewed in this manner, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. T.R.A.P. Rule 13(e); *State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978); *State v. Harper*, 753 S.W.2d 360 (Tenn.Cr.App.1987).

The victim, Bobby Hensley, lived and worked in Asheville, North Carolina. In early 1986 Mr. Hensley asked James Hart to travel to Florida where he would purchase a kilo of cocaine from a prearranged source. Mr. Hart was to transport the cocaine back to Mr. Hensley in North Carolina. Hart testified it was his understanding that Hensley had arranged to resell the cocaine to a person known as "Buddy" who lived in Johnson City, Tennessee.

Hart purchased the cocaine and delivered it to Hensley. On March 22, 1986, Hensley left North Carolina with the cocaine and arrived in Johnson City, Tennessee the same afternoon. Hensley checked into a local motel and shortly thereafter called the home of Franklin "Buddy" Humphreys. The call was received by an acquaintance of Buddy's, Richard Jones. Jones testified he had been recruited by Buddy to "ride" on a drug deal with Hensley for which he would be paid $1,000.00.

Jones and Humphreys went to Hensley's motel. Humphreys and Hensley talked briefly and Humphreys then left stating he was going to Myrtle Beach, South Carolina. Jones remained at the motel with Hensley.

Shortly after Humphreys departed Hensley made a telephone call. At the end of a brief conversation Hensley asked Jones to take him to "Allen's." The two men left the motel and went to the home of Allen Hodgkinson.

After arriving at Hodgkinson's trailer Hensley instructed Jones to go into the trailer and ask Hodgkinson for the money. Hensley remained in the car. Jones went into the trailer and spoke to Allen. Hodgkinson told Jones he did not have any money. Jones then insisted that Hodgkinson personally advise Hensley of this problem.

Hodgkinson and Jones left the trailer. Jones returned to the passenger seat of Hensley's car while Hodgkinson spoke to Hensley through the window of the driver's side. After a short exchange about the lack of money Hodgkinson turned to return to his trailer. According to Jones's testimony Hensley had become quite agitated at this point. Both Hensley and Jones were armed.

As Hodgkinson was heading back to his trailer shots were fired from the car. As a result of the gun fire Hensley was fatally wounded by a single shot to the head. Jones admits to firing the fatal shot but claims self-defense.

During the ensuing hours Hodgkinson and Jones attempted to locate Buddy Hum-

phreys. When they learned Buddy had apparently left for the beach they then covered Hensley's body with a blanket and decided to locate a friend, George Humphreys. Jones drove Hensley's car which contained Hensley's body and the cocaine to the home of Tommy Humphreys. Hodgkinson followed in his car. George Humphreys was found at Tommy's home.

After explaining to George Humphreys what had happened the three men, Richard Jones, Allen Hodgkinson, and George Humphreys, began to plan their next move. Throughout this time period the three men were drinking beer heavily. Without belaboring the events that followed it is sufficient to say the men eventually disposed of Hensley's body by binding him to cinder blocks and dumping the body in a nearby lake. The cocaine was removed from the car and hidden. Hensley's car was abandoned in a remote area where it was later discovered burned.

Hodgkinson, Jones and George Humphreys retained small samples of the cocaine for their personal use. The men drove around in Hodgkinson's car for several hours drinking beer and sampling the cocaine. In the early morning hours of March 23, 1986, Richard Jones was dropped off at a friend's house. Hodgkinson and George Humphreys were attempting to return to Hodgkinson's trailer when Hodgkinson became upset and jumped from the car. He ran to a nearby residence, pounded on the door, and began hysterically screaming "They are going to shoot me."

The sheriff's department was summoned and Hodgkinson was arrested. During this arrest George Humphreys drove past the scene. The officers followed the car and Humphreys was arrested for driving under the influence. As a result of the investigation following these two arrests the events of that evening began to unfold to the authorities. Richard Jones and Buddy Humphreys were arrested a few days later.

■ The trial of this case covered a ten day period. Our summary of the facts and evidence is merely a skeleton of the evidence which was fleshed out at trial. We have reviewed the full record and are convinced the evidence was sufficient for a rational trier of fact to find the defendants guilty of the drug conspiracy charges beyond a reasonable doubt.

The essence of a conspiracy is an agreement to accomplish a criminal or unlawful act. *Owens v. State,* 84 Tenn. 1, 3 (1885). The agreement need not be formal or expressed, but may be implied from acts committed with a common purpose. *United States v. Lacey,* 857 F.2d 1475 (6th Cir. 1988); *Randolph v. State,* 570 S.W.2d 869 (Tenn.Cr.App.1978). Once a party knowingly and voluntarily joins into a conspiracy, even if he comes in after the conspiracy is formed, he becomes a principal. The requirement that the defendants had knowledge of the conspiracy is satisfied by proof he knew of the essential object of the conspiracy. *Trotter v. State,* 158 Tenn. 264, 269, 12 S.W.2d 951 (1929). *See also U.S. v. Christian,* 786 F.2d 203, 211 (6th Cir.1986).

We are satisfied the evidence was sufficient to show a conspiracy between the defendants to distribute cocaine. The transaction involved a large quantity of cocaine. The defendants had known each other for a number of years. By his own admission, defendant Jones knew a large drug deal was in the making. Jones said he was recruited by Buddy Humphreys to assist in the deal. Buddy took Jones to meet with Hensley. Hensley received a call at the motel and immediately asked to be taken to Hodgkinson's home. Hodgkinson discussed the sale of drugs with Hensley and later assisted in disposing of Hensley's body and hiding the cocaine. The jury's conclusion that these three men were a part of a conspiracy is amply supported by these and other facts presented at trial.

■ Turning to the felony murder charges, we can speedily dispose of defendants Hodgkinson and Jones. Jones admits to firing the fatal shot. He claimed self-defense. The jury chose to credit the state's proof over Jones's testimony. This Court will not "sit as the trier of fact" and substitute its judgment for that of the jury. Their finding of guilt as to Jones is supported by the evidence.

■ Having found the proof sufficient to support the conspiracy charge as to Hodgkinson it follows that he was aware of the ongoing drug deal. The state's theory of this case was that these defendants planned to ambush Hensley and take the cocaine. The state's evidence showing the murder/robbery scheme is circumstantial. The theory is based on the chain of events leading up to Hensley meeting with Jones and Hodgkinson. The fact no money was found with which to pay Hensley for the drugs is incriminating. No proof was offered to explain this curious break in the otherwise carefully planned drug deal. Both Hodgkinson and Jones participated in disposing of the victim's body and his car. Finally, both participated in taking the cocaine and hiding it. Even if the proof does not support the murder conspiracy theory it is clear the murder was committed and a robbery took place. These facts viewed together support the finding of murder committed in the perpetration of a robbery as to defendants Jones and Hodgkinson.

■ The felony murder conviction of Buddy Humphreys is a more troubling question. Buddy was not present at the time Hensley was murdered. The state argues he is nonetheless culpable as a co-conspirator relying upon the theory that when one co-conspirator commits the target crime in the absence of another co-conspirator, the absent one is equally as guilty as the principal. *State v. Lequire,* 634 S.W.2d 608, 613 (Tenn.Cr.App.1981).

It is difficult to fully address the sufficiency of the evidence issue as it relates to Buddy Humphreys without also addressing two other issues; (1) whether it was error for the trial court to refuse to instruct the jury on withdrawal from the conspiracy, and (2) whether it was error for the trial court to charge the jury that "[t]he law governing conspiracy is applicable to murder as well as to conspiracy to distribute drugs."

The principle behind the state's theory in this case appears to be that, in fact, there were two conspiracies at play; one conspiracy between Humphreys, Jones, Hodgkinson, Hensley, and Hart to distribute drugs and a second conspiracy between Humphreys, Jones and Hodgkinson to rob and murder Bobby Hensley, taking the drugs for themselves. It is this second conspiracy theory by which the state seeks to hold Buddy Humphreys responsible for Hensley's murder as a co-conspirator.

Conversely, defendant Buddy Humphreys urges us to believe he was never a part of either conspiracy or, if a party to the initial drug conspiracy, he withdrew prior to Hensley's murder and taking of the drugs by Jones and Hodgkinson.

In sorting through this web of activity it is critical to look first to the indictments. The first count of the indictment charges Jones, Hodgkinson and Humphreys with the murder of Hensley. The form of the indictment states common law first degree murder. The jury was instructed on common law murder, felony murder, and all lesser included offenses. It is recognized there is no error in instructing on felony murder where the proof supports such a charge. *See State v. Barnes,* 703 S.W.2d 611, 615 (Tenn.1985); *State v. Johnson,* 661 S.W.2d 854, 860–861 (Tenn.1983). An indictment, however, should inform an accused within some degree of certainty what charges he is called to defend upon. The murder charge as stated in the indictment belies the state's second conspiracy theory.

Additionally, a review of the evidence does little to buttress the second conspiracy theory. As we have previously found, the evidence supports the second count of the indictment; that the defendants, along with Hensley and Hart, conspired to distribute cocaine. The evidence supporting the second conspiracy to ambush and rob Hensley is not as convincing. The state attempts to rely on Humphreys' role in bringing Jones and Hodgkinson together with the victim and the apparent lack of money to pay Hensley once he delivered the cocaine. This evidence may support the drug conspiracy charge but, even when viewed in a light most favorable to the prosecution, we cannot find it sufficient to support Humphreys' conviction of felony murder. Moreover, for Humphreys to have been found guilty of felony murder it would have been

necessary for the jury to have found he was a co-conspirator in a felony robbery or murder conspiracy. He was not charged with either type conspiracy.

Humphreys was not present at the time the murder was committed. There is no evidence to support his entering into an agreement or plan with Jones and Hodgkinson to murder or rob Hensley. Even if the state's theory that Humphreys set Hensley up to be robbed were to be believed, the more appropriate charge against Humphreys would have been accessory before the fact. T.C.A. § 39–1–301.

The jury instruction advising the jurors on conspiracy being applicable to murder as well as the drug charge was accordingly inappropriate. The error in giving this charge was harmless as to Jones and Hodgkinson, the proof against them being overwhelming without the conspiracy theory. The same cannot be said for Humphreys. This instruction may well have been the key element by which the jury was able to include him in the murder conviction.

We find Franklin Humphreys' conviction for felony murder must be reversed and the charge dismissed because there is no evidence he conspired to commit such crime and the evidence on this charge as to him is insufficient to support this verdict.

As to Humphreys' complaint concerning failure to instruct the jury on withdrawal from a conspiracy, we are not persuaded. The burden of proof on a withdrawal defense rests with the defendant. In order to support such a defense the defendant must show that he performed "(a)ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators ..." *U.S. v. Lowell*, 490 F.Supp. 897 (D.C.N.J.1980), quoting *U.S. v. United State Gypsum Co.*, 438 U.S. 422, 464, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978). The mere cessation of activity is not enough to show withdrawal. *See U.S. v. Borelli*, 336 F.2d 376, 388 (2nd Dir.1964).

The only proof in this record relating to Humphreys' claim of withdrawal is his tes-

timony and the testimony of Richard Jones. Humphreys disavows all connection to the drug deal. He claims he immediately removed himself from the situation when Hensley revealed his plans and attempted to recruit his aid. Jones on the other hand testified he was recruited by Humphreys to assist in the drug deal but that it was his impression Humphreys was out of the deal after he left Jones and Hensley at the motel. It is important to note Jones did not say Humphreys affirmatively abandoned or disavowed the scheme, rather that he had no further responsibility.

The evidence does not present facts sufficient to raise a jury issue on withdrawal. The trial court is not obligated to instruct the jury on a defense which is unsupported by the evidence. *State v. Elliott*, 703 S.W.2d 171 (Tenn.Cr.App.1985). This issue is without merit.

Defendants Hodgkinson and Jones claim error in the trial court's granting of the state's special charges to the jury on conspiracy law. Neither defendant cites to the record or quotes from the charge in an effort to aid this Court in reviewing the alleged error. Instead, each defendant cites general principles of conspiracy law and the use of circumstantial evidence in the proof of conspiracy. We have reviewed the entire jury instruction on conspiracy and find it to be an accurate statement of the law. As we have noted earlier, the instruction regarding conspiracy on the murder charge is not supported by the facts; however, that error is harmless as to these two defendants.

Each defendant next claims error as a result of the trial court refusing to sever the offenses and refusing to sever the defendants. The joinder of either defendants or offenses for trial is governed by Rule 8, Tennessee Rules of Criminal Procedure. It is appropriate to join offenses when they are "based upon the same conduct or arise from the same criminal episode ..." Rule 8(a), Tenn.R.Crim.P. Defendants may be joined when "each of the defendants is charged with the conspiracy, and some of the defendants are also charged with one or more offenses alleged to be in further-

ance of the conspiracy." Rule 8(c)(2), Tenn.R.Crim.P.

The trial court's decision on a motion for severance is discretionary and will not be reversible error unless the defendant shows he was clearly prejudiced. *See State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn.Cr.App.1982).

In this case each defendant argues prejudicial error in denial of their motions to sever both the offenses and the defendants. None of the defendants however have provided this Court with specific examples of how they were collectively or individually prejudiced. Instead, each defendant urges us to overturn their conviction arguing the "spillover" effect of their joint trial caused an unfair trial.

Absent a showing of prejudice we will not overturn the trial court's discretion in refusing to sever the defendants. *State v. Coleman*, 619 S.W.2d 112, 116 (Tenn.1981). The state proved a conspiracy as to all three defendants on the drug charge. There is no suggestion that any of the co-defendants would have testified to exculpatory evidence; in fact, two of the defendants testified at trial.

■ As to severance of the offenses we are likewise left without guidance as to how the defendants were prejudiced. The two charges are closely related. The state argues, and we agree, it would have been difficult to prove the murder charge without introduction of proof of the drug conspiracy charge. Severance of these offenses would have resulted in an unnecessary duplication of time and expense. *See State ex rel. Gann v. Henderson*, 221 Tenn. 209, 425 S.W.2d 616, 618 (1968). There is no merit to either severance question.

■ Defendants Hodgkinson and Jones claim error in the state's order of proof on the conspiracy charge. This challenge is based upon the court allowing the state to present declarations of co-conspirators under the co-conspirator exception to the hearsay rule prior to presenting non-hearsay, independent and direct evidence. Defendants cite the three-prong test set out in

*State v. Wiseman*, 643 S.W.2d 354 (Tenn. Cr.App.1982), and claim this test makes independent proof of the existence of a prima facie case of conspiracy a prerequisite to admission of hearsay declarations by co-conspirators. We disagree with this analysis of *Wiseman.*

Declarations of co-conspirators which would otherwise be inadmissible as hearsay, may be offered as proof when certain conditions are met. These conditions are: "(1) the declaration was made in furtherance of the conspiracy; (2) it was made during the pendency of the conspiracy; and (3) there is independent proof of the existence of the conspiracy and the connection of the declarant and the defendant to it." *Wiseman*, 643 S.W.2d at 365. Although this test requires the state to establish a prima facie case of conspiracy, the trial judge has the discretion to permit evidence to be given at any time pending a later showing of admissibility. *Solomon v. State*, 168 Tenn. 180, 76 S.W.2d 331 (1934).

In this instance the state established a prima facie case of conspiracy by independent evidence. There was no abuse of discretion in this case by the trial court in allowing the state to use declarations by co-conspirators prior to other independent, non-hearsay evidence.

The next issue before this Court questions the trial court's refusal to charge the jury on the need for independent corroboration of accomplice testimony. The defendants claim George Humphreys and Carol Hensley (the wife of the victim) were accomplices. This issue is without merit.

The trial court properly instructed the jury on accomplice testimony and the need for corroboration. The court properly left the question of George Humphreys' involvement prior to his being enlisted to dispose of the body as a question of fact for the jury to determine. *See Bethany v. State*, 565 S.W.2d 900 (Tenn.Cr.App.1978).

As to Carol Hensley, there is no showing this witness was an accomplice to either crime. Her only involvement was to possess minor knowledge of her husband's intent to conduct a cocaine deal with a man named "Buddy" who lived in Tennessee.

There is no showing Carol Hensley "knowingly, voluntarily, and with common intent united with the principle offender[s] to commit the offense ..." *Bethany*, 565 S.W.2d at 903. These facts do not give rise to a need to charge on accomplice testimony as to Carol Hensley.

■ The next issue presented for our review asserts error in the trial court's allowing the jury to deliberate until 3:00 a.m. The defendants failed to contemporaneously object to these early morning deliberations. None of the defendants cite to any legal authority to support this issue. In addition, none of the defendants allege how they were prejudiced.

A review of the record reveals no indication of pressure on the jury to continue deliberation. In fact, the jury clearly requested to continue to deliberate and the parties agreed. Unless the actions of the trial judge with regard to continuation of deliberations "cause a jury to reach a verdict in a manner that is patently not of their free and untrammeled will" a new trial should not be granted. *Rushing v. State*, 565 S.W.2d 893 (Tenn.Cr.App.1977). We find no error on this issue.

■ Defendants Hodgkinson and Jones complain of the state being allowed to prove felony murder and of the jury being instructed on the felony murder law. This issue is without merit.

The indictment clearly charges common law murder. However, the law in Tennessee allows proof that the killing was committed in the perpetration of robbery or one of the other listed felonies. *See* T.C.A. § 39–2–202; *State v. Barnes*, 703 S.W.2d 611, 615 (Tenn.1985). The proof at trial clearly showed defendant Jones shot and killed the victim and that defendant Hodgkinson was present when the killing occurred. Both men actively participated in the attempt to cover-up their actions, including the removal of the cocaine from the victim's car. There is no question these two defendants took the drugs from the victim, took a portion for their own use and secreted the remainder. This evidence is sufficient to support the jury instruction.

■ Defendant Hodgkinson filed a pre-trial motion to suppress evidence of telephone records obtained by the Tennessee Bureau of Investigation (TBI) pursuant to a subpoena directed to the telephone company. He claims the records were the product of an unreasonable search and seizure because they were obtained by subpoena rather than a properly issued search warrant.

The state contends, and we agree, this defendant lacks standing to contest the use of these records. This defendant had no expectation of privacy in the telephone records in the possession of and owned by the telephone company. The Fourth Amendment of the U.S. Constitution does not protect a person against unreasonable search or seizure in papers not in that person's possession. *State v. Fears*, 659 S.W.2d 370, 376 (Tenn.Cr.App.1983). Furthermore, the person to whom the subpoena was directed is the only person with standing to contest its validity. *Shelts v. Hathcock*, 528 S.W.2d 47 (Tenn.Cr.App. 1975).

■ Defendant Jones contests the use of his pre-trial statements to officers on the ground these statements were rendered involuntary due to his intoxication. We would first note, the trial court conducted a lengthy suppression hearing regarding these statements and found them to have been made voluntarily. The evidence does not preponderate against the trial court's finding on this question and will not be overturned by this Court.

The state's first use of these statements was during the state's cross-examination of Jones.[1] Once a criminal defendant elects to testify on his own behalf he may be treated as any witness for the purpose of impeachment and prior inconsistent statements. *Wilson v. State*, 537 S.W.2d 446

---

1. We would note the defendant attempted to use the same statements during the state's case-in-chief and during his defense.

(Tenn.Cr.App.1975). There was no error in the use of these statements.

■ Hodgkinson claims error in allowing introduction of a "mug shot" photograph into evidence. His primary objection to the use of the mug shot is that it made him look "vicious and deranged." We find this issue to be without merit.

The trial court found the photograph to be an appropriate representation of the defendant. The photograph was clearly dated March 24, 1986, thereby removing the possibility of implying prior arrest. The trial court did not abuse its discretion in admitting the photograph.

■ Richard Jones had apparently been burdened with the nickname "Rip–Off" since his days in high school. He claims it was error to allow the state to amend the indictment on the day of trial to add this nickname. Conversely, the state claims use of the nickname was entirely appropriate as Rip–Off was the name by which Jones was generally known.

In reviewing the record, particularly the cross-examination of Jones, it is obvious the prosecutor attempted to make as much mileage as possible from this defendant's unfortunate nickname. We can find no legitimate purpose behind the last minute amendment to the indictment or the repeated use of the name at trial. Any error, however, was harmless. The evidence against Mr. Jones on both counts was overwhelming and any prejudice that may have resulted from the use of his nickname, when weighed against this overwhelming proof, would not have been significant.

■ The trial court refused to charge the jury that defendant Hodgkinson was an accessory after the fact or with the offense of disposing of a dead body as a lesser included offense to the murder charge. He now claims error.

The trial court instructed the jury on all lesser included offenses to the murder charge. Disposing of a dead body, T.C.A. § 39–6–702, is not a lesser included offense, and there was no error in refusing to so instruct the jury.

■ For similar reasons it was not error to refuse to instruct the jury on the offense of accessory after the fact. Accessory after the fact is a separate and distinct offense and is not a lesser included offense. *See* T.C.A. § 39–1–306. Hodgkinson was not indicted for this offense. Moreover, in order for the state to prevail on a charge of accessory after the fact it must introduce evidence the principal has been tried and convicted of the crime. *Wilson v. State*, 190 Tenn. 592, 230 S.W.2d 1014 (1950). These issues are without merit.

■ The final question before this Court challenges the sentences imposed as being excessive within their Range I status and erroneous application of consecutive sentencing. Because of our prior finding as to defendant Humphreys' conviction of felony murder it will be unnecessary to review the consecutive sentencing as to him.

We have conducted a *de novo* review of these sentences as required by T.C.A. § 40–35–402(d) and followed the guidelines set out in *State v. Moss*, 727 S.W.2d 229 (Tenn.1986), and *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), and we find the sentences fixed by the trial judge to be appropriate.

DAUGHTREY and REID, JJ., concur.