IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1996 SESSION

FILED

July 23, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 01-C-01-9601-CC-00005 |
| | ) | |
| | ) | Lawrence County |
| v. | ) | |
| | ) | William B. Cain, Judge |
| | ) | |
| | ) | (Attempted Voluntary Manslaughter) |
| ROLAND JOHN WELCH, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

Daniel J. Runde
Assistant Public Defender
128 North Second Street
Pulaski, TN 38478

OF COUNSEL:

Shara Ann Flacy
District Public Defender
128 North Second Street
Pulaski, TN 38478

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

M. Allison Thompson
Assistant District Attorney
450 James Robertson Parkway
Nashville, TN 37243-0493

T. Michael Bottoms
District Attorney General
P.O. Box 459
Lawrenceburg, TN 38464

James G. White, II
Assistant District Attorney General
P.O. Box 459
Lawrenceburg, TN 38464

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Roland John Welch (defendant), was convicted of attempted voluntary manslaughter, a Class D felony, by a jury of his peers. The trial court, finding that the defendant was a multiple offender, imposed a Range II sentence consisting of confinement for eight (8) years in the Department of Correction. In this Court, the defendant contends the admission of certain hearsay statements constituted reversible error, and the trial court misapplied certain mitigating factors and aggravating circumstances. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues, it is the opinion of this Court the judgment of the trial court should be affirmed.

On the evening of March 26, 1993, Ronnie Escue and the defendant were at the Ponderosa, a bar. They were pushing each other near the pool tables. Later, Escue approached an acquaintance, Anita Patterson. He subsequently removed Patterson's clothes from a motor vehicle. Patterson called Kelly Furlong to come get her.

Furlong went to the Ponderosa. Escue wanted to talk to her. However, she did not want to talk to him. Escue would not permit Furlong to leave. Ray F. Barnett, Furlong's then-boyfriend, was driving by the Ponderosa and saw the scuffle between Furlong and Escue and pulled into the Ponderosa parking lot. Escue spoke roughly to Barnett. He attempted to follow Barnett as he exited the Ponderosa. A patron who knew the parties grabbed Escue and held him until Barnett, Furlong, and Patterson left.

Escue called Barnett and threatened to harm him. The defendant and Escue left the Ponderosa and went to the home of Escue's parents. Escue went inside the home, obtained a .22 pistol and a shotgun, and the defendant drove to an area near Barnett's trailer. Escue went inside the trailer. He was armed with the .22 pistol. The defendant was armed with the shotgun. He went to the rear of the trailer.

Barnett attempted to avoid an armed confrontation. He attempted to leave the trailer through the rear door. When he opened the door, the defendant placed the shotgun against his body and said, "Are you going somewhere?" Barnett went to the front porch armed. When Escue pointed a pistol at him, he shot Escue three times. The defendant returned to the front of the trailer and told Barnett, "You forgot about me, buddy." He then

shot Barnett with the shotgun. The defendant then fled into a grove of trees.

# I.

The defendant contends the trial court committed error of prejudicial dimensions by admitting three statements made by Escue as substantive evidence of his guilt. The defendant contends these statements were rank hearsay, and the statements should not have been introduced as evidence. The state contends the three statements were admissible as the statements of a co-conspirator, which are admissible as an exception to the hearsay rule.

The defendant filed a motion in limine seeking to exclude the statement of Escue to Alvin Dudley, an employee of a food mart/gas station. The motion alleged the evidence was hearsay as well as irrelevant. He requested the trial court exclude the evidence, or, in the alternative, give a limiting instruction regarding the reason the evidence was admissible. The defendant filed a second motion in limine seeking to exclude the statements of Escue to Kelly Furlong regarding the threats he made against Barnett. He argues the statements made by Escue constituted hearsay, were irrelevant, and the prejudicial effect of the statements far outweighed the probative value of the statements.

The allegedly objectionable testimony of Alvin Dudley was as follows:

> Q. (By Mr. Bottoms): Okay. When he [Ronnie Escue] got into the car, did he say anything?
>
> A. (Alvin Dudley): He raised a -- what looked to be a .22 automatic pistol, and he said, I'm going to take care of it now. I'm going to kill the S.O.B., and they pulled out.
>
> Q. Okay. And he was sitting in the passenger side?
>
> A. Yes, sir.
>
> Mr. RUNDE: Let me object for the record on that, Your Honor, for the reasons stated.
>
> THE COURT: Overruled.

The allegedly objectionable testimony of Kelly Furlong was as follows:

> Q. (By Mr. Bottoms): Well, how was he waiving it [the pistol] around?

A. (By Kelly Furlong): Well, he put it to my head several times.

Q. What did he [Escue] say then?

MR. RUNDE: Same objection, Your Honor.

THE COURT: Overruled.

A. He [Escue] said a lot of things. He said that he could kill all three of us, if he wanted to. He just went on and on. I don't remember exactly what he said.

The defendant also objected to a telephone call Escue made to Barnett. The following testimony was objected to by the defendant during Barnett's testimony:

Q. (By General Bottoms): Okay. And when you got home to the trailer, did you receive any phone call?

A. (By Ray Barnett): Yes, sir, I did.

Q. Who called?

A. Ronnie Escue.

Q. All right. And what was the substance of that call?

A. I don't remember the exact wording, but he said he was coming out there to get me.

MR. RUNDE: Objection, Your Honor. Same basis as before.

THE COURT: Overruled.

The defendant correctly argues the statements made by Escue are hearsay. Tenn. R. Evid. 801. Therefore, the aforementioned testimony is inadmissible as evidence unless it is admissible pursuant to an exception to the hearsay rule. Tenn. R. Evid. 802.

A statement made by a co-conspirator is admissible as an exception to the hearsay rule. Tenn. R. Evid. 803(1.2)(E). This rule provides "a statement by a co-conspirator of a party during the course of and in the furtherance of the conspiracy" may be offered against that party. Thus, before such statements are admissible as evidence, (1) there must be a conspiracy, (2) the declarant must be a co-conspirator of the defendant, (3) the statement must be made during the course of the conspiracy, (4) the statement must be made in furtherance of the conspiracy, and (5) there must be independent evidence that the conspiracy existed. Tenn. R. Evid. 803(1.2)(E); State v. Hutchinson, 898 S.W.2d 161,

4

170 (Tenn. 1994), cert. denied, _____ U.S. _____, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); State v. Gaylor, 862 S.W.2d 546, 553 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993); State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App.), per. app. denied (Tenn. 1989).

This Court has defined the term "conspiracy" as "a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means." Gaylor, 862 S.W.2d at 553. When attempting to prove the existence of a conspiracy, the state is not required to

> show a formal agreement between the parties to do the unlawful act; a mutual understanding is sufficient, although not manifested by any formal words, or a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise.

Gaylor, 862 S.W.2d at 553.

In this case, there is independent and circumstantial evidence to establish that a conspiracy existed between Escue and the defendant. The two men were close, personable friends. They had been together several hours before the incident in question. They went to the Ponderosa together in the defendant's motor vehicle. The defendant was present at the Ponderosa when Escue made the telephone call to Barnett. They then left in the defendant's motor vehicle en route to the home of Escue's parents. Escue went into the home, retrieved his brother's .22 pistol and a shotgun. Escue told his mother he was "taking care of business." These weapons remained in the front seat of defendant's vehicle. They went and obtained gas. Thereafter, the defendant drove to an area approximately one-half mile from Barnett's trailer. Escue armed himself with the .22 pistol and the defendant armed himself with the shotgun. They walked to the trailer.

Escue went to the front of the trailer, entered the trailer through the front door, and Furlong took him by the arm and they exited the trailer through the front door. The defendant went to the back door of the trailer. When Barnett attempted to exit through the rear door to avoid an armed conflict with Escue, the defendant placed the shotgun in his stomach and said, "Are you going somewhere?" Barnett closed the door and exited through the front door. When Escue pointed a pistol at Barnett, he shot Escue three times.

5

Shortly thereafter, the defendant gravitated to the front of the trailer. He told Barnett, "you forgot about me, buddy." Thereafter, the defendant shot Barnett with the shotgun. He then ran into a wooded area where he hid from the police.

All three statements occurred during the course of the conspiracy. The next question is whether the statements were made in furtherance of the conspiracy.

The telephone call made by Escue to Barnett was clearly in furtherance of the conspiracy. He in essence told Barnett he would be murdered. The statements made by Escue at the scene of the crime prior to being killed by the victim were also made in furtherance of the conspiracy. The statement made to Dudley was not made in furtherance of the conspiracy. It constituted a gratuitous statement of Escue's intent as he rode off into the night, pistol in hand. Hutchinson, 898 S.W.2d at 170.

The statement made to Dudley was nevertheless admissible based upon another exception to the hearsay rule. It can be reasonably inferred the defendant, as the driver of the motor vehicle, heard the statements made by Escue to Dudley regarding what he, Escue, was going to do after leaving the food mart/gas station. Once hearing this statement, the defendant remained silent and drove his motor vehicle to an area near the victim's trailer. Thus, Escue's statements to Dudley could be admitted against the defendant as an adoptive admission. Tenn. R. Evid. 803(1.2)(B); N. Cohen, S. Sheppeard, and D. Paine, Tennessee Law of Evidence § 803(1.2).3 (3rd Edition 1995).

This issue is without merit.

## II.

The defendant challenges the length and the nature of the service of the sentence. He argues the sentence is excessive, and the trial court should have imposed an alternative sentence to incarceration.

## A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the

determinations made by the trial court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and /or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code. Ann. §§ 40-35-103 and -210. State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

**B.**

The defendant contends the trial court abused its discretion by refusing to apply certain mitigating factors when determining the length of the sentence within the proper range. The trial court found the defendant's intoxication to be a mitigating factor. The record supports this finding. The defendant argues the trial court should have found (1)

he acted under strong provocation, (2) the crime occurred under such unusual circumstances that it is unlikely a sustained intent to violate the law motivated his conduct, (3) substantial grounds existed to excuse his behavior, (4) he acted under duress or the domination of Escue, and (5) remorse.

As previously stated, Escue and the defendant were co-conspirators. The defendant drove Escue to the home of his parents where he obtained the two weapons. He also drove Escue to an area near Barnett's trailer. The defendant armed himself with the shotgun and guarded the back door. Barnett attempted to avoid an armed conflict with Escue by existing through the back door. The defendant placed a shotgun in his stomach and asked him if he was going somewhere. The defendant then gravitated to the front of the trailer. After Barnett killed Escue, the defendant told Barnett he had forgotten about him and then fired the shotgun at Barnett. The projectiles struck Barnett. The defendant ran into a wooded area to avoid apprehension from by the police.

The trial court properly refused to consider these mitigating circumstances to reduce the sentence within the appropriate range. The evidence contained in the record supports the findings of the trial court in this regard. Moreover, the trial court heard the testimony and saw the defendant's demeanor while he was testifying as a witness and sitting in the courtroom during the trial and sentencing hearing. The trial court was in the best position to determine the credibility of the defendant when he testified.

## C.

The trial court found the defendant had a previous history of criminal convictions, Tenn. Code Ann. § 40-35-114(1), the victim's injuries were particularly great, Tenn. Code Ann. § 40-35-114(6), the defendant possessed a deadly weapon in the commission of this offense, Tenn. Code Ann. § 40-35-114(9), the defendant had no hesitation about committing this crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10), the felony resulted in bodily injury to the victim and the defendant had been previously convicted of a felony which resulted in death or bodily injury, Tenn. Code Ann. § 40-35-114(11), and the crime was committed under circumstances where the potential

for bodily injury was great. Tenn. Code Ann. § 40-35-114(16).

The defendant contends the trial court improperly applied factors (6), (10) and (16). This Court agrees all three factors may not be used to enhance the defendant's sentence. The defendant may not have his sentence enhanced for creating a risk of bodily harm under factor (16) and for bringing about bodily harm under factor (6). Factor (16) was therefore inappropriately applied. State v. Myers, 03C01-9108-CR-00255, Washington County (Tenn. Crim. App., Knoxville, Oct. 22, 1992.)

The defendant argues the offense of attempted voluntary manslaughter necessarily contemplates a high risk to human life, making the application of factor (10) duplicative of the elements of the offense. This is the case except in those cases where others are present and are placed in harm's way by the defendant's conduct. State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). The defendant engaged in an exchange of gunfire with Ray Barnett while Kelly Furlough stood next to Barnett on the porch. The defendant created a risk to human life beyond the risk to the victim, whom he severely injured.

The finding that a trial court has misapplied one or more enhancement factors does not equate to a reduction in a sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). The circumstances surrounding the offense established the defendant's active participation in the shooting of the victim. The victim suffered serious injuries. Moreover, the defendant has a history of criminal convictions. He has been convicted of voluntary manslaughter, DUI, leaving the scene of an accident, no driver's license, carrying a dangerous weapon, simple possession of marijuana, robbery with a deadly weapon, larceny from a vending machine, attempt to commit a felony, and felony escape. Thus, a lengthy sentence is necessary to protect society from an accused who had a long history of criminal conduct. Tenn. Code Ann.§ 40-35-103(1)(A). Also, lengthy confinement is required in this case to avoid depreciating the seriousness of the offense of attempting to kill another and provide an effective deterrent to the defendant and others likely to commit similar offenses. Tenn. Code Ann. § 40-35-103(1)(B). Unfortunately, the defendant's background establishes he does not have the potential to

9

rehabilitate himself.   Tenn. Code Ann. § 40-35-103(5).

**D.**

The defendant contends the trial court abused its discretion by refusing to impose some form of alternative sentence.  While the defendant was entitled to the presumption of fitness, the state overcame this presumption.

The defendant was not entitled to an alternative sentence in any form given the factors hereinabove set forth.  See State v. Davis, 940 S.W.2d 558 (Tenn. 1997).

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
WILLIAM M. BARKER, JUDGE

_____
J. STEVEN STAFFORD, SPECIAL JUDGE