IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2003 Session

**STATE OF TENNESSEE v. MINDY S. DODD**

**Appeal from the Circuit Court for Rutherford County**
**No. F-48523A     James K. Clayton, Jr., Judge**

———————————

**No. M2002-01882-CCA-R3-CD - Filed December 23, 2003**

———————————

The defendant, Mindy S. Dodd, appeals from her convictions by a jury in the Rutherford County Circuit Court of first degree murder and conspiracy to commit first degree murder. She received sentences of life and twenty years, respectively, to be served concurrently in the Department of Correction. The defendant contends that the evidence is insufficient to support either conviction. We affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Gerald L. Melton, District Public Defender, for the appellant, Mindy S. Dodd.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; Thomas F. Jackson, Jr., and John W. Price, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the shooting death of Sherman Henry Dodd by his nephew, James E. Smallwood, late on the 30th or early on the 31st of December 1999. The defendant was the victim's step-daughter and was impregnated by the victim. She ultimately became his wife. The material facts come primarily from Smallwood's testimony and the defendant's statement to the Smyrna Police.

Smallwood admitted killing the victim sometime between 11:00 p.m. December 30 and 1:00 a.m. December 31, 1999. He gave the following account: The victim gave Smallwood a ride from Hardee's, where Smallwood worked, to their home. After they arrived but while they were still in the victim's truck, Smallwood shot the victim in the right temple with a .38 caliber revolver that Smallwood said the defendant had given to him. Smallwood left the truck and retrieved a Fruitopia

bottle from a box outside the house. He said the defendant had placed the bottle inside the box and had told him to use the bottle as a silencer and to use the box to dispose of everything else. Smallwood held the bottle against the victim's chest and shot through the bottle. He also wore rubber gloves which he said the defendant had given to him.

Smallwood smoked some marijuana and drank a Pepsi. He then drove the truck away from the home, during which time he shot the victim three times in the back. He parked the truck at the Smyrna Square Shopping Center near the Hardee's where he worked. He left the victim in the car and locked the doors, taking the victim's wallet and keys in order to indicate a robbery had occurred.

Smallwood threw his jacket, rubber gloves, and the victim's wallet and keys into a trash container near Hardee's, knowing that it was picked up daily. However, he threw the box, the revolver, the revolver case, a purple bag in which the revolver was kept, and extra ammunition into another trash container. By his directions, the police were able to retrieve the items from the latter container.

Smallwood went to the Hardee's and called the defendant, telling her that "it's done." He said that she knew what he meant because they had talked about it for several days. He said the defendant took him home.

Smallwood recounted a history of sexual depravity with the victim since Smallwood was eight or nine years old. He said that he also had sex with the defendant at the victim's insistence and that the three of them would engage in sexual acts together. He said this continued nightly until he moved out of the victim's home in October 1999.

Smallwood said that he and the defendant began discussing killing the victim in October. He said that the defendant told him that she was growing tired of the victim because, among other things, he was making her have sex with other people with whom the victim worked. After Smallwood left the victim's house, he lived with his mother. However, he returned to the victim's house on December 26, 1999. The defendant talked about leaving the victim, but she was afraid that she would have to leave her children. Smallwood said that the defendant told him that they should go ahead and "take care" of the victim and asked him if he knew anyone who would kill the victim. Smallwood said that he telephoned someone who wanted twenty-five thousand dollars. However, Smallwood said that the price later became two hundred fifty thousand dollars because of the victim's community and police connections. Smallwood said that within a few hours of his return to the victim's home in December, talk of killing the victim resumed with the defendant. He said the defendant told him that he would not believe all the things that the victim had put her through while Smallwood was gone and that the victim would want them to start having sex again. He said that she said the price for his friend was too high and asked him to do it. Smallwood stated that he ultimately told her that he would but that she would have to get a gun. He said the defendant told him where the victim's gun was kept in the house.

Smallwood testified that the defendant gave him a pair of rubber gloves and told him to use them to avoid getting gunpowder residue on his hands and from getting fingerprints in the truck. He said that she handed him a little case that contained a gun and the rubber gloves. The next day, Smallwood began working at Hardee's and he carried the gun with him. Smallwood said that when the victim drove him home that first night, Smallwood pulled the loaded gun out in the truck but could not carry through. He said that when they got home, he put the gun back into the bedroom closet as the victim always left it. Smallwood testified that the defendant gave him the gun again the next day and was upset that he had not killed the victim. He said that she told him that it would be easy to do. He said he was too scared that evening to do it. Again, he put the gun back into the closet. On the next night, Smallwood killed the victim after the victim drove him home.

Smallwood testified that he and the defendant devised a plan. Smallwood was to act as if the victim did not pick him up from work. He was to telephone the victim several times in order to create records that the victim did not answer. Smallwood was to call the defendant at her place of work, Wal-Mart, and the defendant was to call the victim's number several times as if she were trying to locate him. Smallwood said that on the night of the killing, the defendant took him home, returned to work, and called the house about every forty-five minutes. Smallwood testified that he showed the defendant the victim's truck on the night the victim was killed. He said that he pointed the truck out to her and that she drove by it to get a closer look. He stated that the defendant's filing a report with the police the next day was part of the plan. Smallwood said he told police what happened.

William Brice Poteete testified that he worked at the Hardee's with Smallwood. He said Smallwood told him that Smallwood needed all the hours he could get because he was getting ready to get married and inherit some children. Poteete said Smallwood worked the night of December 30, 1999, and left work between 10:00 and 10:30 p.m. He said Smallwood telephoned for a ride and told Poteete he was going to wait outside. Poteete stated that about two to two and one-half hours later, Smallwood returned to the store without his uniform shirt and sweating profusely. He said Smallwood told him that his ride did not arrive and then made another call for a ride.

Robert Curtis Dickinson testified that he worked with the defendant at Wal-Mart. He said they started a personal relationship in August 1999 that continued through December. He said he gave the defendant a ring as a Christmas gift and to let her know that when she divorced her husband, he would marry her. He said she never complained of abuse or ill treatment but was unhappy and afraid. She said she planned to leave the victim after the first of the year.

Dickinson testified that he was working with the defendant on the evening of December 30, 1999. He said that she received a telephone call around 11:40 p.m. and told him that she had to pick up her nephew at work. She told him that her husband should have picked him up an hour earlier. Dickinson stated that the defendant returned to work around 1:15 a.m.

The record reflects that the defendant reported the victim missing at 10:28 a.m., December 31. Officer Trent Givens went to the defendant's house and talked with her. He testified that the

defendant said her daughter told her that the victim left the house around 11:00 p.m. to pick up her nephew at work. She said that her nephew called her at Wal-Mart around 12:30 a.m. to inform her that the victim had not arrived. She told Officer Givens that she gave her nephew a ride home. Officer Givens stated that the defendant was very calm, not upset.

Smyrna Police Lieutenant Todd Spearman testified that he interviewed Smallwood and the defendant on December 31. He said Smallwood ultimately confessed, admitting he had conspired with the defendant and had shot the victim as part of their plan. Lieutenant Spearman said that Smallwood gave a detailed account of the events of the days leading up to the killing. He said Smallwood drew a map from which the police located the Fruitopia bottle, the gun, the bullets, and the case and box that Smallwood had thrown into a dumpster.

Lieutenant Spearman testified that the defendant initially denied any knowledge about the manner of the victim's death. She denied there being any domestic problems or abuse. Lieutenant Spearman testified that when confronted with Smallwood's claim that she had asked him if he had killed the victim yet, the defendant acknowledged being aware of what Smallwood was planning but denied participating in it.

In her statement to the police, the defendant stated that she and the victim had a big argument in October and that the victim had threatened to kill her. She said she was afraid to go to the police but she told Smallwood about it the next morning. She said Smallwood became upset about the threat and said he would take care of it, claiming that he had somebody that he could have do it. The defendant said that Smallwood moved out of their home for awhile but returned after Christmas. She said that when Smallwood arose the next morning after his return, he told her that if he had the victim's gun, he would "do it" that day. The defendant said that she told him that he could not do it. However, when he asked her for gloves, she provided them. She claimed that she did not believe that he would go through with it. She said that when he started working at Hardee's, he took the victim's gun with him. She said that Smallwood knew where the victim kept the gun in the closet, but she acknowledged confirming to Smallwood that the victim always kept the gun in the closet because of the children.

The defendant's statement reflects that on December 30, she was aware that Smallwood took the gun to work. She said she thought he was going to pawn the gun and leave. However, she acknowledged that Smallwood told her that he was going to kill the victim. She said she told him that if he worked late, he should call and she would pick him up. She said she telephoned Smallwood at work around 10:00 p.m. to see if he was still there. She said Smallwood said that "it was a done deal" and that he got off work in fifteen minutes. She said that she did not believe he would do it. She said that Smallwood called her around 12:30 a.m. He asked her if she could come get him at work. She said that after checking with her manager, she telephoned Smallwood to let him know that she would pick him up. She said she asked him if it was done, meaning had he killed the victim. She said Smallwood said it had been done. She said that after picking up Smallwood, he told her that he had gotten rid of the gun and other items, using a dumpster and another trash bin behind Hardee's. She said that Smallwood pointed out the victim's red truck to her and that she

-4-

replied, "Oh, my God, you didn't." She said he started getting hysterical, saying that he thought the defendant wanted him to kill the victim. She said that she responded that she did not think Smallwood would do it.

The defendant's statement reflects that the defendant said that on the way home, she swore herself to secrecy because she was scared. She said that Smallwood told her how he had shot the victim in the temple, obtained a Fruitopia bottle from the house, and "finished unloading the gun."

The defendant said she returned to work. She said that she reported the victim missing to the police the next morning. The defendant acknowledged going by the parking lot where the ambulance and police cars were around the truck that could have been her husband's. She said that she did not stop, though, because she was afraid to check on what was happening.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support a finding of guilt on both the first degree murder and conspiracy to commit first degree murder charges. Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

### A. First Degree Murder

The defendant attacks the first degree murder conviction in two ways. She claims that the evidence is insufficient to show that Smallwood killed the victim with premeditation. She also claims that the evidence fails to connect her with the victim's death except through the testimony of Smallwood, an accomplice.

First degree premeditated murder is defined as an unlawful, "premeditated and intentional killing of another." T.C.A. §§ 39-13-201, -202(a)(1). Additionally, "premeditation" is defined as

> an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the

accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d). The element of premeditation is a question for the jury and may be established by proof of the circumstances surrounding the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). Our supreme court has noted the following factors that demonstrate the existence of premeditation: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing. Id.

In the present case, the defendant contends that Smallwood testified that he decided to kill the victim only when the victim threatened to abuse Smallwood's son. The defendant argues that this reflects both excitement and passion, not reflection and judgment. The defendant also notes that Smallwood testified at one point that he intended to scare the victim with the gun and that he admitted telling the authorities that the defendant essentially told him to use the gun only for self-defense.

The defendant's rendition of parts of Smallwood's testimony is accurate, but it is not complete. In the light most favorable to the state, Smallwood testified that he discussed and planned the victim's killing with the defendant. He said she directed him to the gun, provided him rubber gloves, planned the killing, including the use of the Fruitopia bottle as a silencer, urged its completion, and planned the discarding of the evidence and the subsequent missing person cover story. Smallwood had sought to find someone else who would kill the victim. In this respect, the evidence shows that Smallwood talked with the defendant about killing the victim, obtained the gun for that purpose, prepared before the killing to make it appear to be robbery-related and to conceal his and the defendant's involvement, and shot the victim multiple times. The jury could easily have concluded that Smallwood's testimony about the victim's threats to his son only steeled Smallwood's resolve to complete the planned killing. Evidence that Smallwood premeditated the murder of the victim is sufficient.

Next, the defendant asserts that Smallwood is an accomplice, necessitating the need for independent evidence of the defendant's involvement in corroboration. See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994) (stating that it is well settled that a conviction may not be based upon the uncorroborated testimony of an accomplice). The defendant asserts that no such independent evidence exists.

Unquestionably, Smallwood was an accomplice. However, we take a different view of the evidence than the defendant does. To corroborate the testimony of an accomplice,

there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant

-6-

is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Hawkins v. State, 4 Tenn. Crim. App. 121, 133, 469 S.W.2d 515, 520 (1971) (citations omitted). We conclude that such corroborating evidence exists.

In the light most favorable to the state, the defendant admitted confirming for Smallwood the location of the victim's gun and provided him rubber gloves after Smallwood stated that he intended to kill the victim. The jury could have concluded that the defendant called Smallwood in order to verify that he was going to kill the victim and, in fact, did kill the victim. Moreover, the defendant admitted that Smallwood showed her the victim's truck and told her that he had gotten rid of the gun and other items. Finally, she admitted that she and Smallwood agreed to keep the matter secret and that she called the authorities to report that the victim was missing. We believe that her affirming the whereabouts of the gun, providing the gloves, communicating with Smallwood about whether he had accomplished the killing, and attempting to conceal her knowledge of the event sufficiently corroborate Smallwood's testimony and connect the defendant to the murder. We hold that the evidence is sufficient to convict the defendant of first degree murder.

## B. Conspiracy to Commit First Degree Murder

The defendant contends that the evidence is insufficient to prove that she and Smallwood conspired to commit first degree murder. Again, the defendant relies upon Smallwood's saying, at one point, that he made no "agreement" with the defendant because he did not really intend to kill the victim until shortly before he shot him. And again, the defendant claims that no evidence corroborates Smallwood's claim of her involvement in the killing. However, as previously explained, we believe that sufficient evidence exists to involve the defendant in the first degree murder of the victim.

The remaining issue is whether a conspiracy was proven to exist between the defendant and Smallwood. The defendant contends that no evidence of an agreement to kill the victim exists. We disagree.

The essence of conspiracy has always been an agreement to commit a crime. State v. Hodgkinson, 778 S.W.2d 54, 58 (Tenn. Crim. App. 1989); Owens v. State, 84 Tenn. 1, 3 (1885). Obviously, a conspiracy requires a knowing involvement. However, no formal or expressed agreement is necessary and the agreement may be proved by circumstantial evidence.

> To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise. Conspiracy implies concert of design and not participation in every detail of execution. Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978).

State v. Shropshire, 874 S.W.2d 634, 641 (Tenn. Crim. App. 1993).

In the light most favorable to the state, the evidence shows that the defendant and Smallwood discussed killing the victim. Smallwood testified that he and the defendant planned the manner in which Smallwood would kill the victim and the means by which the two would conceal their involvement. The fact that Smallwood exhibited reluctance in carrying through the plan does not negate the fact that he and the defendant acted in concert for the purpose of killing the victim. Obviously, Smallwood ultimately completed the plan. We hold that the evidence is sufficient to convict the defendant of conspiracy to commit first degree murder.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
JOSEPH M. TIPTON, JUDGE