IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2025 Session

## DERRICK DARNELL MOORE AND DEMICHAEL TYRONE MOORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-907      Steve R. Dozier, Judge**

_____

**No. M2024-00623-CCA-R3-PC**

_____

Petitioner Derrick Darnell Moore and Co-Petitioner Demichael Tyrone Moore[1] were jointly tried and convicted of first degree murder, among other offenses, for which they were each sentenced to an effective term of life imprisonment. Thereafter, they filed separate petitions for post-conviction relief, alleging that they were denied the effective assistance of counsel at trial. Specifically, the Petitioners raised three shared claims, arguing that their respective trial lawyers (1) failed to call key witnesses to testify; (2) failed to seek suppression of cell phone data; and (3) failed to raise or preserve an objection to hearsay for the later appeal. In addition to these shared claims, Petitioner Derrick Moore presented two individual grounds for relief, contending that the post-conviction court erred in denying his claims that his lawyer (1) failed to effectively communicate and investigate the case; and (2) failed to fulfill promises made during opening statements. Co-Petitioner Demichael Moore raised one additional individual claim, asserting that his lawyer was ineffective in failing to object to testimony regarding his history of incarceration. Finally, both Petitioners asserted that the cumulative prejudicial effect of these alleged deficiencies entitled them to post-conviction relief. After a hearing, the post-conviction court denied relief, and the Petitioners appealed. Upon our review, we respectfully affirm the judgments of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

---

[1]     For clarity, we refer to Derrick Darnell Moore as the "Petitioner," as he filed his post-conviction petition first. We refer to Demichael Tyrone Moore as the "Co-Petitioner," based on his later filing. These designations are used solely for organizational clarity and do not reflect any difference in the legal substance or significance of their respective claims.

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Nicholas McGregor, Nashville, Tennessee, for the appellant, Derrick Darnell Moore.

Daniel J. Murphy, Nashville, Tennessee, for the appellant, Demichael Tyrone Moore.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

### A.    PETITIONERS' CONVICTIONS FOR FIRST DEGREE MURDER

In February 2017, the Petitioners were convicted of the murder of Spencer Beasley. On direct appeal, this court summarized the proof introduced at their joint trial in detail. *See State v. Moore*, No. M2018-01764-CCA-R3-CD, 2020 WL 2511251 (Tenn. Crim. App. May 15, 2020), *perm. app. denied* (Tenn. Sep. 16, 2020). At trial, the following facts were established and are relevant to these proceedings.

On the evening of August 20, 2016, Mr. Beasley joined several others in a dice game in front of a residence in Nashville, Tennessee. According to testimony presented at trial, Petitioner Derrick Moore arrived at the dice game after receiving a phone call from his brother, Co-Petitioner Demichael Moore, informing him that Mr. Beasley was present. Derrick Moore drove to the location in a gray sedan accompanied by another individual.

Upon arrival at the scene, Petitioner Derrick Moore confronted the victim about a prior robbery. Witnesses testified that the confrontation escalated into a physical altercation between the two men. As this court previously noted on direct appeal, "Mr. [David] Miller saw [Petitioner] Derrick Moore pull out a handgun and point it at the victim. [Petitioner] Derrick Moore and the victim struggled, and the victim almost took the handgun away from [Petitioner] Derrick Moore. However, [Co-Petitioner] Demichael Moore took the handgun, pointed it only at the victim, and fired it multiple times." *Moore*, 2020 WL 2511251, at *10. Mr. Beasley was struck and died from a single gunshot wound.

2

Investigators recovered a cell phone near the victim and later obtained cell site location information (CSLI) from Petitioner Derrick Moore's phone. The CSLI data placed his phone near the scene of the shooting at the relevant time. Police also recovered surveillance footage and obtained multiple witness statements implicating the Petitioners. *Id.*

Following a trial, a Davidson County jury found the Petitioners guilty of first degree murder, among other offenses, and the trial court sentenced each to imprisonment for life. This court affirmed the convictions and sentences for each Petitioner on direct appeal, and the supreme court denied further review on September 16, 2020. *Id.*

## B.   POST-CONVICTION PROCEEDINGS

On December 1, 2020, Petitioner Derrick Moore filed a timely pro se petition for post-conviction relief, and Co-Petitioner Demichael Moore filed a separate pro se petition three weeks later. The post-conviction court appointed counsel for each Petitioner, and amended petitions were subsequently filed on their behalf.

The amended post-conviction petitions asserted that each Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment. The allegations in each petition overlapped, and they raised three shared claims: (1) that trial counsel failed to call material witnesses who would have supported their defense; (2) that trial counsel failed to seek suppression of CSLI obtained by the State; and (3) that trial counsel failed to raise or preserve an objection to hearsay for the later appeal.

In addition to these shared allegations, Petitioner Derrick Moore asserted two individual grounds for relief. He alleged that trial counsel failed to investigate the case or communicate with him in a meaningful manner and that counsel made unfulfilled promises during opening statements. Co-Petitioner Demichael Moore raised one additional claim, asserting that trial counsel was ineffective for failing to object to testimony referencing his prior incarceration. Finally, both Petitioners asserted that the cumulative effect of these alleged deficiencies was prejudicial and should result in a new trial.

The post-conviction court held an evidentiary hearing on February 20, 2024. At that hearing, Petitioner Derrick Moore testified, along with both trial lawyers and several other witnesses. We summarize the relevant testimony below, organizing it by the particular claims to which each portion of the testimony relates.

3

## 1. Shared Allegations for Post-Conviction Relief

### a. Failure to Call Witnesses

Both Petitioners alleged that trial counsel failed to call two witnesses—Leighanne Shye and Trayco Jenkins—whose testimony, they asserted, would have supported their defense at trial.

Leighanne Shye testified that she stood in her grandmother's front yard on the day of the shooting. She stated that the dice game took place "right in front of" the house and that she saw a young man, later identified as the victim, holding a gun. Ms. Shye testified that she heard gunfire—believing it to be a single shot—and that she did not see either Petitioner at the scene. She further stated that someone had asked her to testify at trial, but because she was incarcerated at the time, she was never brought to the courtroom.

On cross-examination, Ms. Shye gave inconsistent answers about what she observed. She acknowledged that she did not see the actual shooting, but testified that she later saw an unrelated individual holding a gun and observed the victim lying on the ground. She later clarified that she saw the individual with a gun but did not see the victim until afterward. She admitted to prior convictions for theft, criminal impersonation, and attempted forgery.

Trayco Jenkins testified that he was present at the dice game on the day of the shooting. According to Mr. Jenkins, Co-Petitioner Demichael Moore was not present when the shooting occurred. He stated that the victim got into an argument with an individual other than the one identified by Ms. Shye, after which gunshots "rang out" and the crowd dispersed. He testified that he would have provided this account at trial if asked to do so. However, he later acknowledged that he was incarcerated at the time of the trial.

Trial counsel for Co-Petitioner Demichael Moore testified that she could not recall the extent of her efforts to contact Ms. Shye but believed that she had experienced difficulty reaching her at the time of trial. She further stated that, to the extent any contact was made, she expected that Ms. Shye would be unwilling to participate in the proceedings. Similarly, trial counsel for Petitioner Derrick Moore testified that he could not recall whether he had issued a subpoena for Ms. Shye.

4

### b. Failure to Seek Suppression of Cell Site Location Information

The Petitioners also alleged that trial counsel provided ineffective assistance by failing to move to suppress the CSLI introduced by the State.  Petitioner Derrick Moore testified that he first learned of the cell phone records during the trial and did not recall discussing them with trial counsel beforehand.  Neither Petitioner testified further on this issue.

Petitioner Derrick Moore's trial counsel confirmed that he did not attempt to suppress the cell tower data.  He testified that the defense strategy focused on discrediting the State's witnesses, especially because the Petitioner "had already implicated himself before the trial."  Counsel admitted that he had not reviewed the United States Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), before trial.

Co-Petitioner Demichael Moore's trial counsel testified that she retained an expert to review the State's cell phone records.  However, she explained that the expert did not produce a report for "strategic reasons."  She elaborated that a written report would not have been helpful to the defense and would have instead "bolstered the State's case" against her client.

### c. Failure to Raise and Preserve Objection to Hearsay on Appeal

Petitioner Derrick Moore asserted that his appellate counsel was ineffective for failing to challenge on appeal a hearsay statement admitted at trial that identified Co-Petitioner Demichael Moore as the shooter.  At the post-conviction hearing, however, Petitioner Derrick Moore presented no evidence on this issue and did not call his appellate counsel to testify.

For her part, trial counsel for Co-Petitioner Demichael Moore acknowledged that the Petitioner's attorney raised a hearsay objection, but the trial court admitted the evidence as an excited utterance.  Counsel also agreed that she "should have" joined the objection to preserve the issue for appeal, but did not do so, reasoning that the court had already ruled on the matter.

### 2.    Petitioner Derrick Moore's Individual Claims

#### a.    Failure to Communicate or Investigate Mr. Miller

Petitioner Derrick Moore testified that his trial counsel failed to maintain adequate communication with him in advance of trial.  He recalled meeting with trial counsel only once outside of court and said that counsel did not keep him informed about the status of the case.  According to the Petitioner, counsel did not explain the trial strategy or provide meaningful responses when the Petitioner raised concerns about inconsistencies in witness statements or evidence.

In a separate claim, the Petitioner alleged that trial counsel failed to conduct an adequate investigation into David Miller, one of the State's witnesses at trial.  Mr. Miller also testified at the post-conviction hearing.  He stated that he had suffered a brain injury after the events in question and that his memory was impaired.  He confirmed that he no longer had a clear recollection of the underlying events or of having spoken with the police about them.

For his part, trial counsel testified that he met with the Petitioner after reviewing discovery and asked him how he wanted to proceed.  He stated that they met multiple times at the courthouse and that he "tried to keep [the Petitioner] apprised" of the status of the case.  Counsel further testified that he discussed the legal implications of whether the Petitioner should testify.

#### b.    Failure to Fulfill Promises Made in Opening Statements

Petitioner Derrick Moore further alleged that trial counsel made unsupported factual assertions during opening statements that were never substantiated by the evidence.  During the trial, the Petitioner's trial counsel stated in his opening remarks that the victim "carried a gun with him all of the time."  At the post-conviction hearing, counsel testified that he did not recall making that statement.  When asked why he might have done so, he responded that he did not remember specifically, but may have "had a plan" that did not "come to fruition."

6

### 3. Co-Petitioner Demichael Moore's Individual Claim: Failure to Object to Incarceration History

Co-Petitioner Demichael Moore claimed that trial counsel rendered ineffective assistance by failing to object when testimony at trial referenced his prior incarceration. At the hearing, counsel explained that there are "many tactical reasons for not objecting" and noted that, at times, she intentionally avoids objections to prevent the jury from perceiving that "you are hiding something from them."

### C. DENIAL OF POST-CONVICTION RELIEF

Although we discuss the post-conviction court's order in greater detail in the relevant sections of this opinion, the court denied relief to both Petitioners in separate written orders entered on April 5, 2024. As to their shared claims, the court found that the testimony of Leighanne Shye and Trayco Jenkins was not credible and would not have assisted the defense. The court also concluded that trial counsel were not deficient for failing to seek suppression of CSLI, given the legal standards in effect at the time of trial. With respect to the hearsay issue, the court determined that neither Petitioner had shown the matter would have been raised—or would have succeeded—on appeal.

Regarding their individual claims, the post-conviction court found that trial counsel adequately investigated the case and maintained communication with Derrick Moore. Although it found that counsel was deficient in making an unfulfilled promise in opening statements, it concluded the error was not prejudicial. The court further credited trial counsel's strategic decision not to object to references to Demichael Moore's prior incarceration. And, finally, it rejected both Petitioners' claims of cumulative error.

Following entry of the court's orders denying relief, both Petitioners filed timely notices of appeal. This court subsequently consolidated the cases for purposes of appeal and now considers the Petitioners' claims in this joint opinion.

### STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In this case, the principal issue is whether the post-conviction court

properly denied relief because the Petitioners failed to show that they were denied the effective assistance of counsel. As our supreme court has made clear,

> [a]ppellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this [c]ourt reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

As noted above, the Petitioners allege in this appeal that they were denied the effective assistance of counsel during their trial. Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Indeed, "[t]hese constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

8

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "counsel's representation fell below an objective standard of reasonableness." *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

Our supreme court has further held that because "a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." *Goad*, 938 S.W.2d at 370.

In this appeal, the Petitioners assert that the post-conviction court erred in denying their claims of ineffective assistance of counsel. They share three such claims in particular, and jointly argue that their respective trial lawyers rendered deficient performance in three

respects: (1) failing to call key witnesses; (2) failing to seek suppression of cell phone data; and (3) failing to adequately challenge the admission of a hearsay statement.

In addition to these shared claims, Petitioner Derrick Moore raises two individual grounds for relief. He contends that trial counsel failed to effectively communicate with him and investigate the case and, further, that counsel made unfulfilled promises during opening statements. Co-Petitioner Demichael Moore presents one additional individual claim, asserting that his trial counsel was ineffective for failing to object to testimony concerning his prior incarceration. Finally, both Petitioners argue that the cumulative prejudicial effect of these alleged deficiencies warrants post-conviction relief.

We address each of these issues in turn.

## A.    SHARED ALLEGATIONS FOR POST-CONVICTION RELIEF

### 1.    Failure to Call Witnesses

The Petitioners each argue that they were denied the effective assistance of counsel when their respective trial lawyers failed to call key witnesses during the trial. Specifically, both Petitioners assert that their lawyers should have presented the testimony of Leighanne Shye and Trayco Jenkins as witnesses who would have been pivotal to their defense.

Petitioner Derrick Moore argues that although he admitted to being at the scene and one of the witnesses claims he was never there, it would have proven that his presence was insignificant and not part of the conflict. Co-Petitioner Demichael Moore asserts that one of the witnesses would "clear" him from involvement in the victim's death. For its part, the State responds that the post-conviction court specifically noted that these witnesses were not credible and contradicted each other; therefore, neither Petitioner established deficient performance or prejudice. We agree with the State.

Trial counsel "has a duty to investigate and prepare a case, and this duty derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit*, 452 S.W.3d at 796 (citation and internal quotation marks omitted). The duty of counsel is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kendrick*, 454 S.W.3d at 458 (citation and internal quotation marks omitted). As part of the duty to investigate and prepare a case, trial counsel generally "has a duty to use witnesses who may be of assistance to the defense." *State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991). This duty

includes calling witnesses who could help persuade the jury to acquit the defendant and those whose testimony may be relevant to establishing a lesser-included offense. *See id.* That said, decisions about what witnesses to call and what specific evidence to present are generally matters of trial strategy. *See Felts v. State*, 354 S.W.3d 266, 285 (Tenn. 2011); *King v. State*, 989 S.W.2d 319, 333 (Tenn. 1999).

Of course, when a petitioner alleges that trial counsel failed to conduct an adequate investigation, "the petitioner is obligated to show what a reasonable investigation would have revealed." *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8 (Tenn. Crim. App. May 31, 2024), *perm. app. denied* (Tenn. Oct. 24, 2024). Thus, in the context of a claim that trial counsel "failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014) (citation and internal quotation marks omitted).

Once the witnesses are presented at the post-conviction hearing, "the post-conviction court must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008). Then, if the proffered testimony is found to be both admissible and material, the "post-conviction court must assess whether the witness is credible." *Id.* at 869-70. We afford deference to the post-conviction court's findings on credibility and weight of the evidence unless the record preponderates otherwise. *Nesbit*, 452 S.W.3d at 797.

In this case, the Petitioners presented both Ms. Shye and Mr. Jenkins at the post-conviction hearing. However, the post-conviction court found that neither witness was credible and that their testimony contradicted each other and Petitioner Derrick Moore's own admissions to law enforcement. The record supports these findings.

At the post-conviction hearing, Ms. Shye testified that she was across the street from the dice game and saw the events unfold. She claimed that neither Petitioner was present and insisted that the victim was the only person she saw brandishing a firearm. According to Ms. Shye, the victim engaged in a struggle with a man known as "Duwan," who ultimately gained control of the weapon. She did not witness the shooting but inferred that Duwan must have fired the fatal shots.

In contrast, Mr. Jenkins testified that he saw Petitioner Derrick Moore and the victim arguing just before the shooting and that they began physically fighting. He claimed not to have seen either Petitioner with a weapon and said he could not identify the shooter.

Unlike Ms. Shye, he made no mention of a third-party suspect and placed both Petitioners at the scene.

Both witnesses' accounts are irreconcilable with each other and with the trial evidence. At trial, State witnesses—including Maurice Wiley and David Miller—identified Co-Petitioner Demichael Moore as the shooter and described Petitioner Derrick Moore as initiating a physical altercation over a past robbery. Petitioner Derrick Moore himself admitted to being at the scene and to confronting the victim with a hammer immediately before the shooting.

Given the conflicting nature of the post-conviction testimony, its inconsistency with the trial record, and the post-conviction court's credibility findings, the Petitioners failed to establish that counsel's performance was deficient or that any prejudice resulted from the decision not to call these witnesses. Accordingly, we conclude that they are not entitled to relief on this ground.

### 2.    Failure to Seek Suppression of Cell Site Location Information

The Petitioners next contend that their lawyers should have pursued motions to suppress the cell phone data that the State used to show that they were near the crime scene and in possession of the victim's cell phone after the shooting. Specifically, the Petitioners argue that the law in this area has substantially developed since the trial, and counsel should have raised these issues at trial. The State responds, in part, that the Petitioners did not establish that a suppression motion would have been successful. We agree with the State.

To establish prejudice on a claim that trial counsel was ineffective in failing to pursue a motion to suppress, the petitioner must show by clear and convincing evidence that "(1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing." *Phillips*, 647 S.W.3d at 403. Indeed, "to demonstrate prejudice, a petitioner is required to prove that he has a meritorious Fourth Amendment claim and that there is a reasonable probability the outcome of the proceedings would have been different had the evidence complained of been excluded." *Id.* (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

In this case, the post-conviction court held that trial counsel were not ineffective for failing to seek suppression of historical CSLI obtained without a warrant. The court

12

reasoned that *Carpenter v. United States*, 585 U.S. 296 (2018), had not yet been decided at the time of trial, and counsel was not deficient for failing to anticipate that ruling. It further found no resulting prejudice because the cell phone data was not central to the State's case and merely corroborated other evidence placing the Petitioners at the scene. The record supports these findings.

At the time of the Petitioners' trial in 2017, Tennessee law did not recognize an individual's reasonable expectation of privacy in telephone company records. *See State v. Hodgkinson*, 778 S.W.2d 54, 62 (Tenn. Crim. App. 1989). Consistent with that principle, courts also held that a person had no reasonable expectation of privacy in location data derived from those records. *See Nelson v. State*, No. M2022-00375-CCA-R3-PC, 2023 WL 5348789, at *25 (Tenn. Crim. App. Aug. 21, 2023), *perm. app. denied* (Tenn. Feb. 12, 2024). As such, we have recognized that counsel cannot be deficient for failing to file a motion to suppress information in which the defendant had no reasonable expectation of privacy. *Id.* at *26.

After the Petitioners' trial, the United States Supreme Court first recognized that persons have a reasonable expectation of privacy in their CSLI data, and that, therefore, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Carpenter*, 585 U.S. at 316. That said, "[t]rial counsel cannot be held to a standard of being clairvoyant concerning a case not yet decided." *Alberts v. State*, No. M2018-00994-CCA-R3-PC, 2019 WL 4415189, at *6 (Tenn. Crim. App. Sept. 16, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020). Thus, even if a non-frivolous motion could have been filed challenging the warrantless seizure of CSLI, we cannot conclude that the Sixth Amendment *required* trial counsel to seek relief that the law did not permit. *See French v. State*, No. M2019-01766-CCA-R3-PC, 2021 WL 1100765, at *14 (Tenn. Crim. App. Mar. 23, 2021) ("[W]hile a suppression motion relying on these cases would not have been frivolous, the law [governing CSLI] at the time of trial was not so clear that the failure to file one was deficient performance."), *perm. app. denied* (Tenn. June 11, 2021); *Howell v. State*, No. M2018-02050-CCA-R3-PC, 2019 WL 6954191, at *4 (Tenn. Crim. App. Dec. 19, 2019), *perm. app. denied* (Tenn. June 3, 2020). Trial counsel's performance must be assessed according to the precedents and professional norms that governed at the time of trial—not in hindsight. *See Felts*, 354 S.W.3d at 277.

Petitioner Derrick Moore further argues that his trial lawyer should have nevertheless filed a motion to suppress the warrantless seizure of CSLI. Citing *United States v. Jones*, 565 U.S. 400 (2012) and *Riley v. California*, 573 U.S. 373 (2014), he contends that these cases signaled a broader constitutional concern with digital privacy and should have alerted counsel to challenge the use of CSLI at trial. However, we rejected

this very argument in *French*, where we recognized that although the legal landscape surrounding digital privacy was evolving, it had not yet developed into a controlling rule regarding CSLI. *See French*, 2021 WL 1100765, at *14; *see also Howell*, 2019 WL 6954191, at *4. Consistent with that precedent, we cannot conclude that trial counsel performed deficiently by failing to anticipate doctrinal shifts that the courts had not yet adopted.

We agree with the post-conviction court that the law at the time of trial was not so clear that a failure to file a motion to suppress amounted to constitutionally deficient performance. The Petitioners are not entitled to relief on this ground.

### 3. Failure to Raise and Preserve Objection to Hearsay on Appeal

The Petitioners next assert that they were denied the effective assistance of counsel in connection with the admission of a hearsay statement at trial. Although both claims concern the same statement, each Petitioner approaches their own lawyer's performance in a different way. Petitioner Derrick Moore contends that, while his trial counsel objected at trial, appellate counsel was ineffective for failing to pursue the issue on appeal. Co-Petitioner Demichael Moore, by contrast, argues that his trial counsel failed to join the objection, thereby waiving the issue for appellate review.

The State responds, in part, that because the respective appellate lawyers were not called to testify at the post-conviction hearing, the Petitioners have failed to prove deficient performance or prejudice with clear and convincing evidence. We agree with the State.

### a. Background

As background for this issue, the State called Maurice Wiley to testify at trial. Mr. Wiley testified that he was a neighbor of the victim and had picked him up the day of the shooting. Mr. Wiley further testified that he brought the victim to the dice game, where they played with Co-Petitioner Demichael Moore, whom he knew as "Face." Mr. Wiley stated that he left the dice game for ten to fifteen minutes, and upon his return, the only person present was the victim. *See Moore*, 2020 WL 2511251, at *1-2.

Mr. Wiley testified that as he was returning to the dice game, he received a call from his cousin. When the prosecutor asked Mr. Wiley what his cousin said, counsel for Petitioner Derrick Moore objected "to what he told him," presumably on hearsay grounds. The prosecutor replied that the cousin's statement was an excited utterance, and the trial

14

court overruled the objection and allowed Mr. Wiley to testify. Mr. Wiley then reported that his cousin said, "Face just shot [the victim]." Counsel for Co-Petitioner Demichael Moore did not object to Mr. Wiley's testimony.

### b. Petitioner Derrick Moore: Alleged Failure to Raise Issue on Appeal

We address Petitioner Derrick Moore's argument first. He argues that his appellate counsel "failed" him by not raising on direct appeal any issue with the trial court's admission of hearsay. Although the Petitioner's objection to Mr. Wiley's testimony was overruled at trial, his appellate counsel did not raise the issue on appeal. He asserts that his appellate counsel's failure to raise this issue deprived him of "a fair opportunity to contest the validity of the statement and secure relief on appeal."

The standard for evaluating claims of ineffective assistance is the same for both trial and appellate counsel under *Strickland v. Washington*. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). As such, a petitioner must show both that appellate counsel was deficient for failing to preserve or pursue the issue and that there is a reasonable probability the outcome of the appeal would have been different but for counsel's error. *Id.* at 597; *see also Carpenter v. State*, 126 S.W.3d 879, 886-88 (Tenn. 2004).

With respect to issues to be raised on appeal, appellate counsel is "not constitutionally required to raise every conceivable issue on appeal." *Carpenter*, 126 S.W.3d at 887. Instead, appellate counsel "has the discretion to determine which issues to raise on appeal and which issues to leave out." *Id.* To that end, the determination of which issues to present on appeal is a matter that addresses itself to the professional judgment and sound discretion of appellate counsel. *Campbell*, 904 S.W.2d at 597. Indeed, experienced advocates have emphasized "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Carpenter*, 126 S.W.3d at 887.

In this case, the post-conviction court denied relief because Petitioner Derrick Moore did not present appellate counsel as a witness. We agree with that assessment. When considering a claim of ineffective assistance of counsel, we begin with "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson*, 453 S.W.3d at 393; *see also, e.g.*, *Burns*, 6 S.W.3d at 462. The burden is on the petitioner to overcome that presumption. *Kendrick*, 454 S.W.3d at 458.

15

Here, the Petitioner did not call appellate counsel at the post-conviction hearing, and, as such, the record contains no explanation for counsel's decision not to raise the hearsay issue. In the absence of such proof, the Petitioner has not met his burden to rebut the strong presumption that his appellate counsel rendered adequate representation. *See, e.g.*, *McKenzie v. State*, No. E2022-01226-CCA-R3-PC, 2023 WL 3944904, at *5 (Tenn. Crim. App. June 12, 2023) (concluding that, without appellate counsel's testimony, the petitioner could not establish that the omission of an issue was not strategic), *perm. app. denied* (Tenn. Oct. 13, 2023); *Johnson v. State*, No. W2020-00638-CCA-R3-PC, 2021 WL 2010771, at *9 (Tenn. Crim. App. May 20, 2021) (same), *perm. app. denied* (Tenn. Aug. 6, 2021). Accordingly, Petitioner Derrick Moore is not entitled to relief on this ground.

### c. Co-Petitioner Demichael Moore: Alleged Failure to Preserve Issue for Appeal

Co-Petitioner Demichael Moore next argues that he was denied the effective assistance of counsel when his trial attorney failed to object to a hearsay statement that identified him as the shooter. He further asserts that, had the issue been properly preserved and raised on appeal, this court would have reversed his conviction and remanded for a new trial.

As a threshold matter, trial counsel bears the responsibility to make timely objections at trial to preserve legal issues for appellate review. *See* Tenn. R. App. P. 36(a); Tenn. R. Evid. 103(a)(1). In this case, the record confirms that Petitioner Derrick Moore's trial counsel objected to the hearsay statement at trial, but the trial court overruled the objection and admitted the statement as an excited utterance. Co-Petitioner Demichael Moore's trial counsel testified that she did not join the objection, reasoning that the trial court had already ruled on the matter. She acknowledged, however, that she "should have" joined the objection to preserve the issue for appeal.

In this case, the post-conviction court credited this explanation and concluded that trial counsel's decision not to object was a matter of strategy rather than neglect. The court further found that, even assuming deficient performance, the Co-Petitioner failed to demonstrate any resulting prejudice.

The record supports that determination. To prevail, the Co-Petitioner was required to show a reasonable probability that, but for counsel's failure to object, the outcome of the trial—or of a potential appeal—would have been different. *See Davidson*, 453 S.W.3d at 393-94. He failed to make that showing. At trial, counsel for Petitioner Derrick Moore

objected to the same hearsay statement, but the trial court overruled the objection and admitted the evidence under the excited utterance exception. In light of that ruling, there is no reason to believe that an identical objection by Co-Petitioner's counsel would have led to a different result at trial. *See Conaser v. State*, No. M2023-00271-CCA-R3-PC, 2024 WL 244964, at *5 (Tenn. Crim. App. Jan. 23, 2024) (explaining that, to establish prejudice from a failure to object, a petitioner must typically show that the trial court would have granted the objection), *no perm. app. filed*.

Additionally, the Co-Petitioner presented no evidence that the hearsay issue would have been raised—or successfully litigated—on appeal. This omission is significant because the decision to pursue a particular issue on appeal is a matter of professional judgment and strategy left to appellate counsel, who often must select a limited number of the most promising claims. *See Carpenter*, 126 S.W.3d at 887. The Co-Petitioner did not call his appellate counsel to testify, and the record contains no other indication that counsel would have included the hearsay issue among those selected for appeal. Nor does the record suggest that the issue was so likely to result in a new trial that competent appellate counsel would certainly have raised it, either in lieu of or in addition to the issues actually pursued. *See McKenzie v. State*, No. W2022-00513-CCA-R3-PC, 2023 WL 3944904, at *5 (Tenn. Crim. App. June 12, 2023), *perm. app. denied* (Tenn. Oct. 11, 2023) (finding no prejudice where the petitioner failed to prove that appellate counsel would have raised the issue or that it would have succeeded); *Johnson v. State*, No. M2019-02108-CCA-R3-PC, 2021 WL 2010771, at *9 (Tenn. Crim. App. May 20, 2021), perm. app. denied (Tenn. Sept. 22, 2021) (same). Without such proof, we agree with the post-conviction court that the Co-Petitioner failed to establish that trial counsel's failure to object affected the outcome of the appeal.

Accordingly, we conclude that the post-conviction court correctly determined that the Co-Petitioner failed to establish either deficient performance or prejudice. He is not entitled to relief on this ground.

### B. PETITIONER DERRICK MOORE'S INDIVIDUAL CLAIMS

#### 1. Trial Counsel's Communication and Pretrial Investigation

As part of his individual claims, Petitioner Derrick Moore first argues that he was denied the effective assistance of counsel based on trial counsel's alleged failure to adequately communicate with him and to sufficiently prepare him for trial. He claims that counsel failed to keep him informed about trial strategy, disregarded his concerns about

inconsistencies in witness testimony, and met with him only once outside of court. The Petitioner further contends that trial counsel did not review key evidence with him or prepare to impeach key witnesses.

The State responds that the Petitioner's allegations rest solely on his own testimony, which the post-conviction court found less credible than trial counsel's testimony. According to the State, the post-conviction court credited counsel's testimony that he communicated regularly with the Petitioner, reviewed the discovery materials with him, and pursued a defense strategy focused on impeaching the State's witnesses through cross-examination. We agree with the State.

### a.        Failure to Communicate with Petitioner Derrick Moore

When a post-conviction petitioner asserts that trial counsel did not adequately communicate information, we have recognized "that the number of meetings with trial counsel is not particularly relevant to the inquiry." *Morgan v. State*, No. W2024-00208-CCA-R3-PC, 2025 WL 487205, at *5 (Tenn. Crim. App. Feb. 13, 2025), *no perm. app. filed*. Instead, an analysis of that issue

> is directed to how trial counsel was able to impart and receive important information—such as, among other things, the facts of the case, the application of the law, significant case developments, and the petitioner's objectives—so that counsel and the petitioner could make informed decisions about the case.

*Hall v. State*, No. M2021-01555-CCA-R3-PC, 2023 WL 2726780, at *7 (Tenn. Crim. App. Mar. 31, 2023), *no perm. app. filed*. As such, to obtain relief on this type of claim, a petitioner must generally show that "better communication with his trial counsel or better involvement of [the petitioner] in trial preparation could have altered the outcome of the case." *Tate v. State*, No. W2019-01380-CCA-R3-PC, 2020 WL 1972586, at *4 (Tenn. Crim. App. Apr. 24, 2020), *perm. app. denied* (Tenn. Sept. 21, 2020).

In this case, the post-conviction court found that trial counsel met with the Petitioner and his wife to discuss the case and how best to proceed, relayed an offer from the State to testify against his co-defendant, and provided and reviewed discovery with the Petitioner. The court concluded that trial counsel's acts or omissions did not fall below an objective standard of reasonableness, and that neither deficiency nor prejudice had been established by clear and convincing evidence.

The record supports these findings. The Petitioner does not identify, and the record does not reveal, what effect additional meetings and discussions would have had on the outcome of the case. For example, the Petitioner failed to show how additional communication with trial counsel would have affected their trial strategy. He did not show that further meetings would have resulted in counsel being better prepared for trial. He also made no showing that, because of the lack of meetings or communications with trial counsel, he was unable to make an informed decision about how to proceed with the case. *See, e.g.*, *Morgan*, 2025 WL 487205, at \*5 (affirming denial of post-conviction claim based on alleged inadequate communication where the petitioner could not show these factors); *Hall*, 2023 WL 2726780, at \*7 (same).

The Petitioner identifies only one instance of alleged prejudice resulting from counsel's lack of communication: the failure to impeach the State's first witness, Henry Howard. Mr. Howard testified that the victim came to his house after work, showered, and changed clothes before leaving. However, the record shows that the victim was still wearing his work uniform when he was shot—directly contradicting Mr. Howard's account. *See Moore*, 2020 WL 2511251, at \*3. The Petitioner claims he noticed this discrepancy and tried to alert trial counsel, but counsel ignored his concern, thereby missing a chance to challenge Mr. Howard's credibility.

However, even if trial counsel had pursued impeachment on this point, the Petitioner has not shown a reasonable probability that the outcome of the trial would have changed. The victim's clothing was immaterial to any contested issue. His identity was never in dispute, and no one argued that his attire played any role in the events that followed. In addition, multiple witnesses—including the Petitioner himself, in his recorded statement—confirmed that the victim was wearing his work uniform at the time of the shooting.

Given the limited relevance of this detail and the cumulative evidence corroborating it, the Petitioner has not shown that he suffered any prejudice from trial counsel's alleged failure to communicate with him. Accordingly, we affirm the post-conviction court's denial of relief on this ground.

> **b.    Failure to Investigate for Possible Impeachment of Mr. Miller**

The Petitioner also asserts that his trial counsel rendered ineffective assistance by failing to prepare to impeach Mr. Miller at trial. He claims that trial counsel did not interview Mr. Miller or investigate Mr. Miller's possible memory issues. As a result, the

Petitioner argues, trial counsel's cross-examination left his testimony "largely unchallenged."

Our supreme court has recognized that "[t]rial counsel has a duty to investigate and prepare a case, and this duty derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit*, 452 S.W.3d at 796 (citation and internal quotation marks omitted). Counsel need not chase every lead or exhaust every avenue, but the Constitution requires at least a reasonable investigation—or a reasoned decision not to pursue one. *E.g.*, *Burns*, 6 S.W.3d at 462 (Tenn. 1999) (citing *Strickland*, 466 U.S. at 691). Decisions about what witnesses to call and what specific evidence to present are generally matters of trial strategy. *See Felts*, 354 S.W.3d at 285.

Moreover, when evaluating trial counsel's performance on cross-examination, "the petitioner must show what additional beneficial evidence could have been elicited through his or her preferred cross-examination." *See Keene v. State*, No. E2022-01410-CCA-R3-PC, 2023 WL 5978223, at *5 (Tenn. Crim. App. Sept. 14, 2023) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Feb. 13, 2024). This means simply that a petitioner should first provide "specifics regarding what questions trial counsel should have asked" the witness. *McDonald v. State*, No. E2016-02565-CCA-R3-PC, 2017 WL 4349453, at *4 (Tenn. Crim. App. Sept. 29, 2017), *no perm. app. filed*. The petitioner must then show how the witness would have answered trial counsel's questioning by presenting that witness at the post-conviction evidentiary hearing. *See Brown v. State*, No. W2021-01331-CCA-R3-PC, 2022 WL 16919956, at *8 (Tenn. Crim. App. Nov. 14, 2022), *perm. app. denied* (Tenn. Mar. 9, 2023); *Britt v. State*, No. W2016-00928-CCA-R3-PC, 2017 WL 1508186, *4, *7 (Tenn. Crim. App. Apr. 25, 2017), *no perm. app. filed*.

In this case, the post-conviction court found that the Petitioner's trial counsel considered Mr. Miller's statements to police and developed a strategy to discredit Mr. Miller through a lengthy cross-examination. Taking issue with these findings, the Petitioner asserts that trial counsel should have investigated Mr. Miller more thoroughly. Pointing to Mr. Miller's testimony at the post-conviction hearing, the Petitioner recites that Mr. Miller confirmed that he had no clear recollection of the victim's death and that he suffered a brain injury sometime after the events in this case. The Petitioner further offers that Mr. Miller had no recollection of speaking with law enforcement and that trial counsel was aware that Mr. Miller was likely seeking money from law enforcement in return for talking with them. The Petitioner asserts that trial counsel's failure to investigate Mr. Miller deprived counsel of the opportunity "to fully impeach" Mr. Miller's credibility.

20

One problem exists, though: all of this information was elicited during the trial and presented to the jury. For instance, Mr. Miller testified that he had suffered a brain injury and could not even recall the victim's name, among other things. He stated that he had engaged in heavy substance use and denied remembering the shooting itself, although he acknowledged knowing what others had told him about it. Mr. Miller also testified that he did not remember speaking with law enforcement but indicated that, if he had, it was probably to obtain money to buy drugs. He further stated that any such interaction with police would have occurred while he was under the influence of heroin and cocaine. *See generally Moore*, 2020 WL 2511251, at *3.

The Petitioner has not identified how additional investigation by trial counsel would have produced additional impeachment evidence against Mr. Miller. Because all the alleged impeachment evidence was presented to the jury, the Petitioner has not shown how additional investigation by trial counsel would have produced a different result. As such, the record supports the post-conviction court's finding that trial counsel pursued a reasonable strategy and presented the available impeachment evidence at trial. The Petitioner is not entitled to relief on this ground.

### 2. Failure to Fulfill Promises Made in Opening Statements

Petitioner Derrick Moore next argues that his trial counsel rendered ineffective assistance by failing to follow through on a representation made during opening statements. Specifically, the Petitioner claims that trial counsel stated the victim "carried a gun with him all the time," but then failed to present any supporting evidence at trial. The Petitioner contends that this unfulfilled promise undermined counsel's credibility and prejudiced the defense. The State responds that any such failure did not result in prejudice, emphasizing the incidental nature of the remark and the strength of the State's proof linking the Petitioner to the crime. We agree that the Petitioner has failed to show prejudice from any deficiency in trial counsel's opening statement.

This court has cautioned that trial counsel should only promise the jury what he or she is confident can be proven. *See Zimmerman*, 823 S.W.2d at 225 (recognizing that a "[f]ailure to keep a promise to the jury impairs [counsel's] personal credibility" (cleaned up)). Although a failure to produce promised evidence may, in some instances, constitute deficient performance, courts evaluate such claims in light of the surrounding circumstances and the presence (or absence) of a strategic explanation. *See Felts*, 354 S.W.3d at 285. This is especially true where counsel's conduct reflects "a wholesale, mid-trial abandonment of [an] established strategy." *Russell v. State*, No. M2022-00096-CCA-

21

R3-PC, 2022 WL 17336521, at *7 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Mar. 9, 2023). Still, to obtain relief, a petitioner must show a reasonable probability that the broken promise rendered the outcome of the trial unreliable or fundamentally unfair. *See, e.g.*, *Martin v. State*, No. M2003-00534-CCA-R3-PC, 2004 WL 438328, at *16 (Tenn. Crim. App. Mar. 10, 2004), *perm. app. denied* (Tenn. Sept. 7, 2004).

In this case, the post-conviction court concluded, among other things, that the Petitioner failed to establish any resulting prejudice from trial counsel's representations during opening statements. The record supports this finding. During opening statements, trial counsel stated that the Petitioner brought a hammer to the dice game because he believed the victim "is usually armed" and "carried a gun with him all of the time." Counsel also noted that the Petitioner believed the victim would be armed because the victim had previously robbed him.

Although the Petitioner did not testify at trial, counsel succeeded in introducing the Petitioner's statement to police through the testimony of Detective Weeks. The detective confirmed that the Petitioner reported being robbed at gunpoint by the victim and explained to the detective that he brought a hammer to the dice game because the victim "carried a gun and . . . was known to rob people." Counsel then referred to these statements during his closing argument.

In light of this testimony, it is not obvious that counsel's opening statement contained an unfulfilled promise. After all, the substance of trial counsel's opening statement—that the Petitioner believed the victim was armed—was conveyed to the jury through admissible evidence. Nevertheless, given Detective Weeks's testimony, the Petitioner has not shown that the outcome of the trial would have been different or more favorable but for counsel's representations during his opening statement. As such, we agree with the post-conviction court that the Petitioner has not shown prejudice. The Petitioner is not entitled to relief on this ground.

### C.  CO-PETITIONER DEMICHAEL MOORE'S INDIVIDUAL CLAIM: FAILURE TO OBJECT TO INCARCERATION HISTORY

We next address the single claim that the Co-Petitioner raises individually: that his trial counsel was ineffective when she failed to object to two references to his previous incarceration history. According to the Co-Petitioner, this information was irrelevant, inadmissible, and "so prejudicial as to alter the outcome of the proceedings against him."

The State responds that the Co-Petitioner has failed to establish a deficiency or resulting prejudice as it relates to trial counsel's strategic decision-making on this matter.

As background for this issue, two witnesses during the trial mentioned that Co-Petitioner Demichael Moore had previously been in jail. For example, Maurice Wiley testified that the Co-Petitioner had been staying with his mother for about a year, and he measured the time from when the Co-Petitioner was released from jail. In addition, Mr. Miller testified that he knew the Co-Petitioner from the neighborhood, explaining that the Co-Petitioner was often absent, being "always in jail or something." The Co-Petitioner's trial counsel did not object to either reference.

As an initial matter, "[t]here is no obligation on a lawyer to object at every opportunity." *Whitehair v. State*, No. M2019-00517-CCA-R3-PC, 2020 WL 916061, at *19 (Tenn. Crim. App. Feb. 26, 2020) (citation omitted), *perm. app. denied* (Tenn. July 17, 2020). Generally, "the decision of when and whether to object at trial is a matter of strategy that is within trial counsel's discretion." *Richardson v. State*, No. W2021-00981-CCA-R3-PC, 2022 WL 4494164, at *9 (Tenn. Crim. App. Sept. 28, 2022), *no perm. app. filed*. Indeed, this court has recognized that attorneys may choose not to object to avoid drawing attention to unfavorable testimony or appearing to conceal facts from the jury. *See Payne v. State*, No. W2008-02784-CCA-R3-PC, 2010 WL 161493, at *15 (Tenn. Crim. App. Jan. 15, 2010), *perm. app. denied* (Tenn. May 11, 2010); *McMillon v. State*, No. E2020-01260-CCA-R3-PC, 2022 WL 1002410, at *9 (Tenn. Crim. App. Apr. 4, 2022), *perm. app. denied* (Tenn. Sept. 28, 2022).

In this case, trial counsel was not asked during the post-conviction hearing to explain her failure to object to these specific statements. However, she testified more broadly that attorneys may have strategic reasons for withholding objections, including the desire to avoid giving the impression that they are hiding something from the jury. The post-conviction court credited this testimony and found that the Co-Petitioner had failed to establish deficient performance.

The record supports this finding. This court has consistently held that, without some evidence demonstrating that a decision was not strategic, a petitioner claiming ineffective assistance for failure to object cannot overcome the presumption of effective representation. *See Brooks v. State*, No. M2010-02451-CCA-R3-PC, 2012 WL 112554, at *14 (Tenn. Crim. App. Jan. 11, 2012), *perm. app. denied* (Tenn. May 16, 2012); *McMillon*, 2022 WL 1002410, at *9; *State v. Sexton*, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *5 (Tenn. Crim. App. Jan. 12, 2007), *perm. app. denied* (Tenn. May 14, 2007). Because Co-Petitioner Demichael Moore failed to rebut that presumption, he has not

established deficient performance. Accordingly, he is not entitled to post-conviction relief on this ground.

### D.     CUMULATIVE ERROR

Finally, both Petitioners contend that multiple instances of deficient performance from their respective trial lawyers result in a cumulative prejudicial effect. This court has recognized that "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Olive*, 2024 WL 2797015, at *11 (citation and internal quotation marks omitted). In this case, however, the record does not reflect multiple instances of deficient performance by either of the Petitioners' respective trial lawyers. Without such a showing, a claim of cumulative error cannot succeed. *See, e.g.*, *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022) ("[T]he Petitioner has not demonstrated there were multiple instances of deficient performance so he is not entitled to relief under the cumulative error doctrine."), *perm. app. denied* (Tenn. Apr. 18, 2023). Accordingly, we conclude that neither Petitioner is entitled to relief on this basis.

### CONCLUSION

In summary, we hold that the post-conviction court properly found that the Petitioners were not denied the effective assistance of counsel during their trial or appeal. Accordingly, because the Petitioners' convictions or sentences are not void or voidable due to a constitutional violation, we respectfully affirm the post-conviction court's denial of relief in each case.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE

24